Filed 9/3/25  P. v. Sanks CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JERRY LEE SANKS,<br><br>    Defendant and Appellant. | H051990<br>(Monterey County<br> Super. Ct. No. 18CR008467) |

In 2021, defendant Jerry Lee Sanks pleaded guilty to voluntary manslaughter, among other charges.  The trial court imposed a sentence of 25 years four months in state prison.  Sanks then filed a petition for resentencing under Penal Code section 1172.6.[1] The trial court denied the petition at the prima facie stage and did not issue an order to show cause.  The court ruled Sanks was ineligible for relief because, when Sanks entered his plea in 2021, liability for murder based on a theory of imputed malice had already been invalidated by Senate Bill No. 1437 (2017-2018 Reg. Sess.)  (Senate Bill 1437).

Sanks contends the trial court erred by denying his petition for resentencing at the prima facie stage.  For the reasons below, we conclude this claim is without merit, and we affirm the denial of the resentencing petition.

---

[1] Subsequent undesignated statutory references are to the Penal Code.

# I. PROCEDURAL BACKGROUND

## A. *Prosecution and Conviction*

In 2018, the prosecution filed a complaint charging Sanks with one count of willful, deliberate, and premeditated murder.  (§ 187, subd. (a).)  In 2019, the prosecution moved to consolidate the case against Sanks with a case against his brother, both of whom were charged with the same murder.  The trial court granted the motion to consolidate, and a preliminary hearing was held in June 2019.  The trial court held both defendants to answer, and the prosecution filed an information charging both with willful, deliberate, and premeditated murder.  In 2020, the prosecution amended the information to add the allegation that Sanks personally and intentionally discharged a firearm, proximately causing great bodily injury or death.  (§ 12022.53, subd. (d).)

In September 2021, the prosecution filed a second amended information charging Sanks with three counts: count 1—willful, deliberate, and premeditated murder (§ 187, subd. (a)); count 2—assault with a semiautomatic firearm (§ 245, subd. (b)); and count 3—voluntary manslaughter (§ 192, subd. (a)).  All three counts charged the offenses were committed on the same date against the same victim.  Sanks's brother was also charged in counts 1 and 3.  As to count 1, the prosecution further alleged Sanks personally and intentionally discharged a firearm, proximately causing great bodily injury or death.  (§ 12022.53, subd. (d).)  As to count 2, the prosecution alleged Sanks personally used a firearm (§ 12022.5, subd. (a)) and personally inflicted great bodily injury (§ 12022.7, subd. (a)).  As to count 3, the prosecution alleged Sanks personally used a firearm (§ 12022.5, subd. (a)).

That same day, the parties entered a plea agreement whereby Sanks pleaded guilty to count 2 (assault with a semiautomatic firearm) and count 3 (voluntary manslaughter).[2]

---

[2] Although the minute order for the plea hearing states Sanks entered pleas of no contest, the trial court clarified that Sanks had pleaded guilty.  Sanks's written plea

2

He admitted the allegations attached to each count. In October 2021, in accord with the plea agreement, the trial court imposed a total of 25 years four months in state prison. The court granted the prosecution's motion to dismiss count 1 (willful, deliberate, and premeditated murder).

### B. Petition for Resentencing

In January 2024, Sanks filed a petition for resentencing under section 1172.6 using a preprinted form on which he checked various boxes to allege his eligibility for relief. The prosecution filed a written opposition to the petition, arguing Sanks had failed to make a prima facie showing that he was eligible for relief. Based on the filing of the initial complaint in 2018—prior to the enactment of Senate Bill 1437—the prosecution conceded that, under the literal language of section 1172.6, subdivision (a)(1), "a complaint was filed" that allowed the prosecution to proceed under a now-invalid theory of liability. The prosecution opposed the petition on the ground that Sanks was ineligible for relief because Senate Bill 1437 had already taken effect by the time he entered the plea agreement. The prosecution pointed out that the operative charging document was filed in September 2021—after the change in law—such that the prosecution could not have proceeded under an impermissible theory of imputed malice at the time of the plea.

Sanks argued he was eligible for resentencing because he could have been convicted of murder under an impermissible theory of malice at the time of his plea. Sanks asserted that nothing in the record of conviction—including all factual admissions and stipulations made as part of his guilty plea—conclusively established the underlying theory of guilt.

At a hearing in March 2024, the trial court denied the petition at the prima facie stage. Looking to the second amended information filed in September 2021, the court found that the prosecution could not have proceeded under an improper theory of murder

_____

agreement also stated he was pleading guilty on both counts. The record does not include a transcript of the plea hearing.

liability. Second, the court rejected Sanks's allegation that he could not presently be convicted of murder as a result of changes in the law, because when he entered his plea, the now-invalid theories of liability had been eliminated, such that he could only be convicted under a valid theory.

The trial court rejected the prosecution's concession that a complaint had been filed that allowed the prosecution to proceed under a now-invalid theory of liability. The court reasoned that the initial complaint had been superseded by subsequent charging documents, and that the only relevant charging document for the purposes of determining eligibility under section 1172.6 was the most recently filed charging document. Because the most recent charging document—the second amended information—was filed after Senate Bill 1437 had eliminated the now-invalid theories of liability, the court concluded Sanks could not show he could have been prosecuted under an invalid theory.

## II. DISCUSSION

Sanks contends the trial court erred by denying the petition at the prima facie stage because the record of conviction does not establish he is ineligible for relief as a matter of law. The Attorney General contends Sanks is ineligible for relief because he entered his plea after Senate Bill 1437 had already taken effect.

### A. Senate Bill No. 1437 and Penal Code Section 1172.6

Senate Bill 1437 made several ameliorative changes to California homicide law effective January 1, 2019. "Senate Bill 1437 'amend[ed] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stats. 2018, ch. 1015, § l, subd. (f).)" (*People v. Gentile* (2020) 10 Cal.5th 830, 842.) "As part of these ameliorative changes, malice, a key element the People must prove in a murder prosecution, may no longer be imputed to a

4

defendant solely because the defendant participated in another crime." (*People v. Patton* (2025) 17 Cal.5th 549, 558 (*Patton*).)

"The Legislature, to provide relief to those with existing murder convictions dependent on theories of the crime it had rejected, devised a path to resentencing." (*Patton*, *supra*, 17 Cal.5th at p. 558.) Section 1172.6 sets forth procedures for previously convicted defendants who could not be convicted under the law as amended to retroactively seek relief by filing a petition for resentencing with the court that sentenced the petitioner. (See *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).) With the enactment of Senate Bill No. 775, the Legislature expanded eligibility for resentencing relief to persons convicted of manslaughter. (§ 1172.6, subd. (a); Stats. 2021, ch. 551, § 2.) As relevant here, section 1172.6, subdivision (a) provides, "A person convicted of . . . manslaughter may file a petition with the court that sentenced the petitioner to have the petitioner's . . . manslaughter conviction vacated and to be resentenced on any remaining counts" when all the conditions set forth in subdivisions (a)(1) through (a)(3) apply.

As applicable here, eligibility for relief depends on the following conditions: "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of . . . manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder. [¶] (3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a)(1)-(a)(3).)

"Petitioners seeking relief under section 1172.6 must, first, file a facially valid petition that states the statutory requirements for relief [citation], and second, make a 'prima facie showing' [citation], before a court must issue an order to show cause and hold an evidentiary hearing on the ultimate question of resentencing at which the People will bear the burden of defending a conviction under the amended law [citation]." (*Patton*, *supra*, 17 Cal.5th at p. 556.) "A petition that includes '[a] declaration by petitioner that the petitioner is eligible for relief . . ., based on all the requirements of subdivision (a),' the case number and year of the petitioner's conviction, and whether the petitioner seeks counsel is facially sufficient." (*Id.* at pp. 558-559.)

" 'After the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief.' [Citation.] If the 'petitioner makes a prima facie showing,' then the trial court issues an order to show cause and holds 'a hearing to determine whether to vacate the . . . conviction and to recall the sentence and resentence the petitioner.' [Citation.]" (*Patton*, *supra*, 17 Cal.5th at p. 559.) The prima facie inquiry is analogous to that of a habeas proceeding. (*Id.* at p. 563.) The court takes the petitioner's factual allegations as true and makes a preliminary assessment of whether the petitioner would be entitled to relief if the allegations were proved. (*Ibid.*) The court should not reject the petitioner's factual allegations on credibility grounds, and the court should not engage in factfinding involving the weighing of evidence or the exercise of discretion. (*Ibid.*)

However, "[w]here facts from the record of conviction are undisputed, accepting them over contrary legal allegations that are merely conclusory is not 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.]" (*Patton*, *supra*, 17 Cal.5th at pp. 565-566.) "[A] petitioner who offers only conclusory allegations of entitlement to relief under section 1172.6, in response to a record of conviction that demonstrates the petitioner's conviction was under a still-valid theory, has not, thereby, made a prima facie showing." (*Id.* at p. 557.) "[T]he record of conviction the parties

6

may consult at the prima facie stage includes a preliminary hearing transcript preceding a guilty plea." (*Id.* at p. 568.)  In determining whether a petitioner was convicted under a now-invalid theory, the court may rely on unchallenged, relief-foreclosing facts within a preliminary hearing transcript to refute conclusory "checkbox" allegations.  (*Id.* at p. 564.)

We independently review the trial court's determination of whether the petitioner has made a prima facie showing of eligibility for relief.  (*People v. Nguyen* (2024) 103 Cal.App.5th 668, 677.)

### B.  The Trial Court Did Not Err in Denying the Petition at the Prima Facie Stage

As set forth above, the prosecution initially charged Sanks by complaint with one count of willful, deliberate, and premeditated murder in 2018—before Senate Bill 1437 took effect.  At the time, the law did not prohibit the prosecution from charging Sanks under a now-invalid theory of murder based on imputed malice.  The preliminary hearing took place in 2019—after Senate Bill 1437 took effect—and the prosecution filed an information charging both Sanks and his brother with one count of willful, deliberate, and premeditated murder.  In 2021, the parties entered a plea agreement, whereupon the prosecution filed a second amended information and Sanks pleaded guilty to voluntary manslaughter.

Sanks contends he is eligible for relief under section 1172.6 because his petition satisfies the requirements of subdivisions (a)(1) through (a)(3), and nothing in the record of conviction establishes as a matter of law that he is ineligible for relief.  The Attorney General contends Sanks is ineligible for relief because he was convicted under the current law.  (See *People v. Gallegos* (2024) 105 Cal.App.5th 434 (*Gallegos*) [petitioner ineligible for relief because he could not be prosecuted through an imputed malice theory at the time he entered his plea]; *People v. Lezama* (2024) 101 Cal.App.5th 583 (*Lezama*) [persons who pleaded guilty to manslaughter after the statutory amendments eliminated imputed malice theories of murder liability are not eligible for resentencing as a matter of

7

law]; *People v. Reyes* (2023) 97 Cal.App.5th 292 [petitioner ineligible for relief because now-invalid theories of murder liability had been eliminated at the time he entered his plea].)

The procedural history of *Lezama* is similar to the procedural history of this case. The prosecution initially charged Lezama in 2017—before the enactment of Senate Bill 1437—with a complaint alleging murder and conspiracy to commit murder. (*Lezama, supra*, 101 Cal.App.5th at pp. 585-586.) In June 2019—after Senate Bill 1437 took effect—Lezama entered an agreement to plead guilty to voluntary manslaughter. (*Id.* at p. 586.) After he petitioned for resentencing under section 1172.6 in 2022, the trial court denied the petition based partly on the ground that Lezama had pleaded guilty after Senate Bill 1437 took effect. (*Id.* at pp. 586-587.)

The Court of Appeal affirmed the denial of the petition. (*Lezama, supra*, 101 Cal.App.5th at pp. 585-586.) The court looked to section 1172.6, subdivision (a)(3)—requiring, as a condition of eligibility, that "[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019"—and the court construed it to mean that, at the time of the conviction, the only way the petitioner could be convicted of murder was through a now-invalid theory of imputed malice. (*Id.* at p. 590.) The court supported its interpretation with extensive citations to the legislative history of Senate Bill No. 775. "These consistent statements of legislative intent reveal the Legislature's aim in the manslaughter context was to make relief available to defendants who were convicted by plea or trial at a time when the prosecution could have pursued a murder charge, but the only way of doing so would have been a now invalid theory of imputed malice. Thus, in the manslaughter plea context, the most reasonable reading of the third criterion for establishing resentencing eligibility is that at the time of conviction—i.e., the time the plea was entered—the only way to a murder conviction was through an imputed malice theory. As a matter of law, this cannot be true for a person, like defendant, who pled

8

guilty to voluntary manslaughter at a time when imputed malice theories had already been statutorily eliminated." (*Id.* at p. 590.) (See also *Gallegos*, *supra*, 105 Cal.App.5th at p. 443 [accord].)

*Lezama* is on point, and as applied here, it forecloses relief. Sanks asserts *Lezama* and *Gallegos* were wrongly decided. He argues the *Lezama* Court had no occasion to resort to legislative history because the plain language of section 1172.6 is unambiguous, and the plain language of subdivision (a)(3) necessarily requires a factual determination regarding the truth of the petitioner's allegation that they could not presently be convicted of murder because of the ameliorative changes to the law. As to the ambiguity of the statutory language, we are persuaded by the analysis set forth in *Lezama*: "The notion that someone could not presently be convicted of murder or attempted murder because of changes made by Senate Bill 1437 implies that at one point in time the circumstances were different. But the statute does not specify the temporal point of contrast. On one hand, and consistent with defendant's position, it could be the time of filing of an information charging murder which left open the possibility the prosecution could employ an imputed malice theory. On the other hand, and consistent with the Attorney General's position, it could be the time of the trial or plea which resulted in the conviction." (*Lezama*, *supra*, 101 Cal.App.5th at pp. 588-589.)

The same ambiguity arises here with respect to 1172.6, subdivision (a)(1). Sanks argues that the filing of the initial complaint satisfies section 1172.6, subdivision (a)(1) because it was filed before Senate Bill 1437 took effect, such that "[a] complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed" under a now-invalid theory. The Attorney General adopts the position of the trial court below: that the initial complaint was superseded, and that the pertinent charging document is the information filed at the time Sanks entered his plea.

We need not resolve the issue as to 1172.6, subdivision (a)(1) because we conclude the application of subdivision (a)(3) to the record of conviction in this case

9

conclusively shows Sanks is ineligible for relief. We respectfully disagree with the *Lezama* Court, however, that the language of subdivision (a)(3) makes Sanks ineligible *as a matter of law* based solely on the fact that he entered his plea to manslaughter after Senate Bill 1437 took effect. It is a truism that the changes effected by Senate Bill 1437 eliminated the possibility of a *lawful* conviction for murder based on a now-invalid theory. As a practical matter, however, Senate Bill 1437 did not prevent prosecutors from pursuing murder cases based on theories of imputed malice because prosecutors and trial courts could still take the position that Senate Bill 1437 was unconstitutional. Had the prosecution pressured Sanks to accept a plea agreement for manslaughter while the prosecution was still pressing a murder charge based on a theory of imputed malice, arguably he could be eligible for relief.

But Sanks does not claim the prosecution engaged in such tactics in this case, and we see nothing in the record that might support such a claim. The prosecution initially charged Sanks with premeditated murder, and at the preliminary hearing, the prosecution introduced evidence that Sanks was the gunman who shot the victim to death. The prosecution charged Sanks with premeditated murder in every charging document filed thereafter, and in the first amended information, the prosecution added an allegation that Sanks personally and intentionally discharged a firearm, proximately causing the victim great bodily injury or death. (§ 12022.53, subd. (d).). Throughout the record, in every pleading that asserted the facts of the offense—from September 2018 up to the trial brief filed in June 2021—the prosecution consistently alleged Sanks was the gunman who shot the victim to death, and that he did so intentionally. Senate Bill 1437 did not invalidate liability for murder under theories alleging the defendant was the actual killer, acting with the intent to kill. (See *Lewis*, *supra*, 11 Cal.5th at p. 959; *People v. Delgadillo* (2022) 14 Cal.5th 216, 233.)

To be clear, we do not credit any of the prosecution's factual allegations as true or accurate, and we do not cite these portions of the record for the purpose of weighing the

evidence whether Sanks committed murder under some permissible theory. We note only that nothing in the record suggests the prosecution ever asserted a now-invalid theory of imputed malice, such that Sanks might have felt pressured to accept a plea agreement as a result.[3]

With respect to section 1172.6, subdivision (a)(3), Sanks contends it is sufficient that his petition alleged he could not presently be convicted of murder without a now-invalid theory of imputed malice. But the California Supreme Court has clarified that a prima facie showing requires more than conclusory legal allegations. "[A] petitioner who offers only conclusory allegations of entitlement to relief under section 1172.6, in response to a record of conviction that demonstrates the petitioner's conviction was under a still-valid theory, has not, thereby, made a prima facie showing." (*Patton*, *supra*, 17 Cal.5th at p. 557.) Likewise, Sanks has not made such a showing.[4]

Given that Senate Bill 1437 had changed the law to eliminate liability for murder based on imputed malice at the time Sanks entered his plea, and given that nothing in the record suggests the prosecution was asserting an invalid theory of murder liability at the time, we conclude Sanks failed to make a prima facie showing that he could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189

---

[3] Additionally, Sanks entered his plea after the California Supreme Court had denied review in two cases rejecting constitutional challenges to Senate Bill 1437. (See *People v. Lamoureux* (2019) 42 Cal.App.5th 241, review denied Feb. 19, 2020, S259835; *People v. Superior Court (Gooden)* (2019) 42 Cal.App.5th 270, review denied Feb. 19, 2020, S259700.)

[4] After the prosecution filed its opposition to the petition, Sanks filed a brief in response in which he asserted, among other things, that the prosecution *could* have pursued a theory of natural and probable consequences in its case against Sanks because his brother was also charged with the murder. But Sanks did not support his assertion with any specific facts in the record of conviction. Such speculation is insufficient to establish a prima facie case. (*Patton*, *supra*, 17 Cal.5th at p. 567 [absent specific facts, no material dispute arises from mere latent, speculative possibilities].) More to the point, Sanks never asserted that the prosecution *actually did* pursue a theory of natural and probable consequences in its case against Sanks, and we see nothing in the record to suggest it did.

made effective January 1, 2019.  (§ 1172.6, subd. (a)(3).)  (See also *Lezama*, *supra*, 101 Cal.App.5th at pp. 585-586.)

Finally, Sanks contends the trial court's denial of his petition without issuing an order to show cause and the opportunity to present evidence at an evidentiary hearing violated his procedural due process rights.  He argues that "when state law gives a criminal defendant the expectation of receiving a certain right or benefit, the denial of that right may have the additional effect of violating federal due process."  (See *Hicks v. Oklahoma* (1980) 447 U.S. 343, 346 [defendant's sentencing under an unconstitutional law deprived him of due process].)  As to the underlying prosecution in this case, state law gave Sanks the right not to be prosecuted for murder under an invalid theory of imputed malice.  For the reasons above, he has not shown he was denied that right.  As to the petition for resentencing, section 1172.6 gave Sanks the right to file the petition, which he did; the statute made the right to an evidentiary hearing conditional upon his making a prima facie showing of eligibility for relief, which he did not.  Sanks has failed to show he was denied any rights granted to him by state law.

For the reasons above, we conclude the trial court did not err in denying Sanks's petition for resentencing at the prima facie stage.

### III.    DISPOSITION

The judgment is affirmed.

_____
Greenwood, P. J.


WE CONCUR:


_____
Grover, J.


_____
Lie, J.


H051990
People v. Sanks